# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| SHERRY NED | * | CIVIL ACTION NO. 06-0686 |
| VS. | * | MAGISTRATE JUDGE HILL |
| THE HARTFORD | * | BY CONSENT OF THE PARTIES |

## REASONS FOR JUDGMENT

Before the Court is the Motion for Summary Judgment filed by the defendant Hartford Life and Accident Insurance Company ("Hartford") [rec. doc. 15]. Plaintiff Sherry Ned ("Ned") has filed a memorandum in opposition to Hartford's Motion, to which Hartford has filed a Reply. [rec. docs. 21and 26].  By this Motion, Hartford contends that its Administrator properly and reasonably denied Ned's claim for long-term disability ("LTD") benefits under an ERISA[1] group insurance plan issued by Hartford to Ned's employer, Doctor's Hospital of Opelousas, which is an affiliate of Province Healthcare Company, ("Doctor's Hospital") because Ned failed to timely submit her claim for benefits and further failed to submit sufficient objective medical evidence to support a finding of disability or to establish eligibility for benefits under the terms of the plan.  For the following reasons, Hartford's Motion for Summary Judgment will be

---

[1]The Employment Retirement Income Security Act (ERISA), 29 U.S.C. §1001, et. seq.

1

**GRANTED**, and plaintiff's claims against Hartford will be **DISMISSED WITH PREJUDICE**.

<u>**Background**</u>

Hartford issued a Group Insurance Plan, policy number GLT-674235,  to Doctor's Hospital, as an affiliate of Province Healthcare Company (hereinafter the "plan").  The plan provides for both short and long-term disability benefits.

Under the terms of the plan, a participant may receive disability benefits if the participant is prevented by accidental bodily injury, or sickness from performing the essential duties of the participant's own occupation during the ninety day "Elimination Period" and the next twenty-four months following that period.[2]  (Ex. B, Bates 000019). These benefits become payable after the 90 day elimination period expires.   (Ex. B, Bates 00005).

The elimination period commences from the date of the alleged onset of disability. (Ex. B, Bates 00005).   In the present case, Ned's last day of work at Doctor's Hospital prior to the onset of her alleged disability was October 26, 2003.  (Ex. C, Bates 000086). Thus, the elimination period commenced on October 27, 2003 and expired January 25, 2004.

---

[2]Benefits are payable thereafter if the individual establishes that she has an injury or sickness that causes a physical or mental impairment to such a degree of severity that she is unable to engage in any occupation for which she is otherwise qualified by education, training and experience.  (Ex. B, Bates 000019).

It is undisputed that Ned did not submit her claim for benefits until, at the earliest, October 28, 2005, the date of her attorney's (Mr. Aucoin's) correspondence attaching Ned's Application for benefits, a single Operative Report of Dr. Thomas V. Bertuccini dated October 30, 2003 describing a surgical procedure performed on Ned that date, namely, a laminectomy, facetectomy and foraminotomy of the fourth and fifth Lumbar vertebrae and a March 30, 2005 letter from the Social Security Administration finding Ned eligible for disability benefits.[3]   (Ex. C, Bates 000082-000093).   The Operative Report indicates a postoperative diagnosis of "lumbar stenosis, severe, L4-5 with foraminal stenosis, symptomatic", but contains no prognosis, no indication of present or future limitations, no findings or comments regarding Ned's ability or inability to engage in any work activities of her own or any other occupation, and no statement of any past or present disability.  (Ex. C, Bates 000090-000092).  The Social Security Administration letter is a standardized form letter which lists the information used to make Ms. Ned's determination, but does not attach or describe the contents of that information. (Ex. C, Bates 000084).

---

[3]Although the cover letter was dated October 28, 2005, Hartford asserts that it did not receive the correspondence until December, 2005. Whether the claim is deemed filed on the earlier or later date makes no difference in this court's analysis as under either date, the claim was untimely filed.  Accordingly, the undersigned has given plaintiff the benefit of the earlier date.

The plan sets forth the time limitations for filing claims for benefits as follows:

> Written Proof of Loss must be sent to us within 90 days after the start of the period for which we owe payment.  If proof is not given by the time it is due, it will not affect the claim if:
>
> (1) it was not possible to give proof within the required time; and
>
> (2) proof is given as soon as possible; but
>
> (3) not later than 1 year after it is due, unless you are not legally competent.

(Ex. B, Bates 000017).

In accordance with the plan provisions, and given the absence of any evidence in the administrative record and any competent summary judgment evidence that Ned was legally incompetent during the limitation period, the latest possible date that Ned could have submitted her claim for benefits to Hartford was January 25, 2005, one year and ninety days after the onset of her alleged disability, or April 25, 2005, one year and ninety days after the running of the elimination period.[4]

By letter dated December 14, 2005, attaching pertinent plan provisions, Hartford notified Ned that initial review of her claim revealed a delay in providing both notice of a claim and proof of loss to Hartford, as well as insufficient documentation as to her claim for benefits.  Accordingly, Hartford requested that Ned provide, in pertinent part, the

---

[4]The policy provides that a proof of loss must be sent to the insurer within 90 days "after the period for which [the insurer] owes payment." That provision was probably meant to require proof of loss within 90 days of the onset of disability. However, benefits only become payable after the expiration of the 90 day elimination period. Thus, 90 days "after the period for which [the insurer] owes payment" may be construed as 90 days after the elimination period, that is, 180 days after the onset of disability. However the period is computed, it makes no difference under the facts of this case. The proof of loss was not filed until more than one year and 180 days after the alleged onset of disability. Under any calculation, the filing of the proof of loss here was untimely.

following documents and information:  a statement as to the reason for her delay in submitting her claim for benefits, an Attending Physician Statement of Disability, the names and addresses of all physicians who had treated Ned since the onset of her alleged disability including copies of medical records from each, copies of her Social Security Award Certificate and birth certificate, and a completed Authorization to Disclose Health Information. (Ex. C, Bates 68-69).

By correspondence dated December 30, 2005, Ned's attorney, Mr. Aucoin, submitted a copy of Ned's April 15, 2005 Social Security Disability Notice of Award indicating the monthly amount Ned would receive from that agency, a copy of Ms. Ned's birth certificate, and a duplicate copy of Dr. Bertuccini's October 30, 2003 Operative Report.  (Ex. C, Bates 000056-000066).  No signed medical authorization, or additional medical information or records were provided, nor was there any statement as to Ms. Ned's reasons for her delay in filing her claim for benefits.

On January 6, 2006, referencing and enclosing a copy of its December 14, 2005 letter, Hartford informed Ned that more information was needed to evaluate her claim. (Ex. C, Bates 000067).

When no response was received, on January 11, 2006, Hartford again informed Ms. Ned of the need for additional information.  In that correspondence Hartford again specifically requested the following missing information:  a statement as to the reason for her delay in submitting her claim for benefits, an Attending Physician Statement of

Disability, the names and addresses of all physicians who treated Ned since the onset of her alleged disability including copies of medical records from each, and a signed medical authorization.  (Ex. C, Bates 000054-000055).

After again receiving no response from Ned or her attorney, on January 17, 2006, Hartford consulted with Ned by telephone concerning the reasons for her untimely submission of her claim for benefits.  Ned indicated that she knew of two other individuals had applied for, and been denied, benefits.  Accordingly, she did not submit her claim because she felt that she, too, would be "turned down". Later she changed her mind and decided to file her claim.  (Ex. C, Bates 000110).

Receiving no further response or information from Ned, by letter dated January 30, 2006, Hartford sent its last request for the missing documents and information to Ned's attorney, Mr. Aucoin, requiring a response within twenty-one days to avoid a decision based upon the inadequate existing information.  That letter again referenced the pertinent policy provisions regarding the time limitations for filing claims for benefits and satisfactory proof of loss, and again requested the following necessary, but as yet un-submitted, documents and information, namely: a statement as to the reason for her delay in submitting her claim for benefits, an Attending Physician Statement of Disability, the names and addresses of all physicians who treated Ned since the onset of her alleged disability including copies of medical records from each and a signed medical authorization.  Hartford expressly advised Ned and her counsel that this would be

6

Hartford's last request for information to enable Hartford to determine Ms. Ned's alleged disability status. (Ex. C, Bates 000050-000051).

After more than the twenty-one day response period had lapsed without Hartford having received any additional proof of Ms. Ned's alleged eligibility for benefits from either Ned or her attorney Mr. Aucoin, Hartford denied Ned's claim for benefits under the plan based on the existing administrative record.  In a five page determination letter dated March 6, 2006, Hartford determined that it had not received sufficient evidence to support Ms. Ned's claim of disability.  Specifically, Hartford cited the absence of a statement as to the reason for Ned's delay in filing her claim for benefits, an Attending Physician's Statement of Disability, medical records relating to her claimed disability and a signed medical authorization for Hartford to obtain medical information from Ned's doctors.  In making that determination Hartford noted the "lack of response and lack of medical information" submitted in support of Ned's claim, despite repeated efforts by Hartford to obtain that information to determine if  Ned satisfied the plan requirements for benefits. Moreover, Hartford stated that it's decision to deny Ned benefits was based on policy language, citing the plan provisions regarding the requirements for submitting a satisfactory proof of loss and applicable time limitations for submitting claims to Hartford. (Ex. C. Bates 000045-000049).

Hartford advised Ned, through counsel, of her right to appeal its adverse determination in light of the existing administrative record, and she was expressly

7

provided an opportunity to submit additional medical proof in support of her claim.  Ned was further advised that any additional information submitted would be reviewed with her appeal. (Ex. C. Bates 000048).

On March 15, 2006, Ned, through counsel, appealed Hartford's determination submitting a one page letter in which counsel asserted that Ned "is totally and permanently disabled from any and all gainful employment."  No documentary evidence or other supporting information was submitted. (Ex. C, Bates, 000043).

Ned's appeal was denied by Hartford's Appeal Unit on April 6, 2006. On appeal, Hartford again concluded that "the claim's office investigation could not be completed and also was hindered due to insufficient proof of loss: late submission of your client's claim, lack of response and lack of medical information." Noting the one page unsupported submission of counsel, the Hartford further determined that "[o]n appeal, proof of loss still has not been submitted.  Therefore, as you have not provided the proof of loss requested, the decision to deny your client's Long Term Disability benefits was correct under the terms of the Policy."  (Ex. C, Bates 000033).

On April 18, 2006, plaintiff filed an original petition for the recovery of past due long-term disability insurance benefits due under the plan against Hartford. [rec. doc. 1]. In her original petition, Ned asserts that Hartford's decision to deny her long-term disability benefits under the plan was unreasonable, arbitrary and capricious.  [rec. doc. 1, ¶ 7].   All parties have consented to the exercise of this Court's jurisdiction by the undersigned.  [rec. docs. 9 and 11].

By Joint Stipulation filed on November 1, 2006, the parties agreed that the group long-term disability benefits policy at issue in the above-captioned lawsuit is governed by ERISA, that ERISA preempts all state law claims against Hartford and that the plan grants the plan administrator discretionary authority to determine eligibility for benefits and to interpret the terms of the plan, hence the applicable standard of review is "the arbitrary and capricious/abuse of discretion standard."  [rec. doc. 13].  Because the parties failed to stipulate that the administrative record filed by Hartford was the complete record considered by the plan administrator, Ned was ordered to describe and file any documents that she believed were omitted from the administrative record. Ned was advised that her failure to timely respond to this court's Order would result in a finding that the administrative record previously filed into the record by Hartford was complete. [rec. doc. 12 and 19].  Ned has failed to timely respond to this court's Order.  Accordingly, the administrative record previously filed by Hartford is hereby deemed to be the complete record considered by Hartford when determining Ned's eligibility for benefits under the plan.

By the instant Motion, Hartford moves for summary judgment under Federal Rule of Civil Procedure 56.  Hartford contends that, based on the administrative record, its decision to deny Ned's claim for disability benefits was proper and reasonable, and therefore, did not constitute an abuse of discretion.  More specifically, Hartford contends that Ned failed to timely submit her claim for benefits and further failed to submit

sufficient objective medical evidence to support a finding of disability or to establish eligibility for benefits under the terms of the plan.

Ned opposes the Motion arguing that she should not be held responsible for her failure to timely or properly submit her claim for benefits to the Hartford because "no one ever told her what to do" and that she "would have supplied [Hartford] with the necessary documentation if she would have known to do so."  She further asserts that there is no evidence that her employer "instructed her on her on how to initiate and process a claim within the delays" or "instructed her to submit reports to [Hartford] or how to supply the administrative record with evidence."  She additionally asserts that she would have "pursued the application and appeal process dictated by the plan terms if she would have known to do so."  Ned further "suggests that she is disabled and entitled to benefits" given that at "50 [fifty] years of age she was diagnosed with lumbar stenosis, severe, L4-5 with foraminal stenosis, symptomatic" and had a surgical procedure performed by Dr. Bertuccini ...."  Thus, based on the "medical evidence in the record and the fact that [Hartford] knew she was receiving social security benefits", Ned asserts that Hartford was placed on "notice of the severe limiting affects of her condition." Nevertheless, Ned states that she "waives her claim that the administrator was arbitrary and capricious" and "submits that this allegation be withdrawn" because "she does not wish to take up the court's time with this."

## Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;  *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*).  When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim.  *Celotex Corp.,*477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986);  *Little*, 37 F.3d at 1075.  If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for.  Fed. R. Civ. P. 56(c);  *Celotex Corp.*, 477 U.S. at 322.  Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party.  *Id.*

<u>**Standard of Review**</u>

The parties have stipulated that Ned's claim against Hartford is controlled by the Employees' Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*  [rec. doc. 13]. As such, Ned's claim is limited to an appeal of the denial of his claim pursuant to 29 U.S.C. § 1132(a)(1)(B):  "A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

"ERISA provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators." *Bratton v.  National Union Fire Insurance Company of Pittsburgh, PA*, 215 F.3d 516, 521-22 (5th Cir.  2000).  "[A] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Id.* at 521 *citing Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113-115, 109 S.Ct. 948 (1989). "When an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Bratton,* at 521 n.4 *citing Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (*en banc*).  The parties have stipulated that the plan vests Hartford with the discretionary authority to determine eligibility for benefits and to construe the terms of the group policy, and accordingly, that this Court must apply the abuse of discretion standard in reviewing Hartford's decision to deny Ned benefits. [rec. doc. 13]. *See also Goselnik v.*

*American Tel. and Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001);  *Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1305 (5th Cir. 1994).

When applying the abuse of discretion standard to factual findings, courts "analy[ze] whether the plan administrator acted arbitrarily or capriciously.  A decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.' An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Lain v. Unum Life Insurance Company of America,* 279 F.3d 337, 342-43 (5th Cir. 2002) (internal citations omitted) .

With respect to the question of what evidence the court may consider in determining whether Hartford abused its discretion, the Fifth Circuit has been clear: "when assessing factual questions, the district court is constrained to the evidence before the plan administrator." *Vega*, 188 F.3d at 299.  "The administrator has no duty to contemplate arguments that could be made by the claimant." *Id.*  Moreover, claimants "*must* present their strongest available case to the plan administrator, because the primary decision is made at that point." (emphasis in the original) *Duhon,* 15 F.3d at 1309.  This rule is based on the recognized Congressional intent "to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." *Id.*  Thus, "attempt[s] to circumvent [this] congressional mandate by failing to fully argue [a] claim and provide supporting evidence during the administrative appeal

13

process, in the hopes that [the] case w[ill] be decided in the federal courts, must fail." *Id.* As a result, the district court inquires only whether "the record adequately supports the administrator's decision." *Vega,* 188 F.3d at 298.

In her opposition, Ned conclusorily asserts that Hartford "has a conflict of interest in administering the plan since [it is] a 'self interested insurer'" and hence, this court should accord Hartford's decision less deference. To the extent that Hartford serves as both the insurer and administrator of the plan the court should apply a "sliding scale" abuse of discretion standard; the greater the evidence of conflict on the part of the administrator, the less deferential the court's abuse of discretion standard should be. *Vega*, 188 F.3d at 297-299; *See also Bratton*, 215 F.3d at 521 n.4. In such cases, the court should consider the potential conflict as a "factor to be considered in determining whether the administrator abused its discretion in denying the claim." *Vega,* 188 F.3d at 297. While the "sliding scale" may be applicable in this case, that does not change the fact that the plan affords discretion to the administrator, nor does the court's recognition of a potential conflict raise the level of scrutiny. *Id.*; *See also Duhon*, 15 F.3d 1306; *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 599 (5th Cir. 1994). Rather, this court "need only assure that the administrator's decision falls somewhere on a continuum of reasonableness, even if on the low end." *Vega,* 188 F.3d at 297.

In the instant case, Ned has produced no evidence to demonstrate the nature and extent of the alleged potential conflict. However, to the extent that Hartford serves as both insurer and claims fiduciary of the plan, this court will assume *arguendo* that

14

Hartford has an "inherent conflict of interest". *See Lain*, 279 F.3d at 343; *Robinson v. Aetna Life Insurance Co.*, 443 F.3d 389, 395 (5th Cir. 2006).  In considering records similar to that which exists in this case, that is, where a conflict theoretically exists but the plaintiff has provided no actual evidence with respect to the degree of the alleged conflict, the Fifth Circuit has determined that "it is appropriate to review the administrator's decision with only a modicum less deference than [the court] otherwise would."  *Vega,* 188 F.3d at 301; *Robinson*, 443 F.3d at 395; *Lain*, 279 F.3d at 343.  Hartford's decision will be upheld if it is supported by "some concrete evidence in the administrative record."  *Vega*, 188 F.3d at 302; *Robinson*, 443 F.3d at 395.

In light of the parties' stipulation, the above cited jurisprudence and consistent with the Fifth Circuit's dictates in *Vega*, *Robinson* and *Lain*, this Court will apply the abuse of discretion standard affording Hartford's decision to deny Ned benefits only "a modicum less deference" than would be accorded a plan administrator fully independent from Hartford.

## Law and Analysis

Initially, the court notes that by opposition herein, Ned has conceded that her claim for benefits was untimely filed.  Moreover, she has withdrawn her allegation that the Hartford's decision to deny Ned benefits was arbitrary and capricious.  Accordingly, it appears that Ned has waived her claim for judicial review of Hartford's decision to deny her benefits as well as judicial determination of her right to benefits from Hartford.  Thus, summary judgment is properly granted based solely on the plaintiff's concessions.

However, even if this were not the case, the record clearly supports a finding that Hartford's decision to deny Ned benefits was reasonable, was supported by concrete evidence in the record and was not an abuse of discretion.  Under the appropriate standard of review, this court's task is not to determine whether Hartford could have reached a different decision, but rather based on the record before Hartford, whether the decision reached by Hartford was reasonable and supported by concrete evidence in the record, keeping in mind that Hartford had no duty to contemplate arguments that could have been made by Ned, but were not.  *Vega*; *Lain; Robinson*, supra.

Hartford denied Ned benefits based on its determination that Ned had failed to timely submit her claim for benefits and further failed to submit sufficient objective medical evidence to support a finding of disability or to establish eligibility for benefits under the terms of the plan.   This determination was based on the terms and conditions of the plan, of which both Ned and her counsel were fully advised, and Ned's repeated failure to provide Hartford with the required information and documentation necessary for Hartford to determine Ned's eligibility for benefits under the plan, despite Hartford's repeated attempts to obtain that information from Ned and her counsel.

It is undisputed that Ned failed to timely submit her claim for benefits.  In accordance with the plan provisions, and given the absence of any evidence in the administrative record and any competent summary judgment evidence that Ned was legally incompetent during the limitation period, the latest possible date that Ned could have submitted her claim for benefits to Hartford was January 25 or April 25, 2005. It is equally

undisputed that, at the earliest, Ned submitted her claim for benefits on October 28, 2005, the date that her attorney sent correspondence attaching Ned's Application for benefits, the Operative Report of Dr. Thomas V. Bertuccini dated October 30, 2003 and March 30, 2005 letter from the Social Security Administration.[5]  Ned was provided ample opportunity to explain her reason, if any, as to why she failed to provide Hartford with notice and proof of her claim within the limitation period.  Indeed, the record discloses that Hartford asked for a statement to this effect no less than three times prior to its initial decision to deny benefits, and again requested a statement to this effect in connection with any appeal which Ned might lodge.  However, Ned failed to submit any written reason for her untimely filing.

Moreover, while Ned appears to assert in this court that her untimeliness was due to alleged inactions on the part of her employer in explaining the claim submission procedure, that explanation was never provided to Hartford.  To the contrary, the administrative record contains a sole verbal explanation given by Ned for her delay in filing, namely, that based on rejection of claims filed by her colleagues, Ned decided that her claim would likewise be "turned down."  Hence, she simply chose not to file her claim until after the limitation period had expired.  Thus, under binding Fifth Circuit authority, Ned's attempt to argue that her employer was in some way responsible for her untimely or insufficient filing, made for the first time in this court, must fail.  *Duhon*, 15 F.3d at 1309; See also *Moufarrej v. UNUM Provident Corp.*, 100 Fed. Appx. 284 (5th Cir. 2004) (noting

---

[5]See fn. 2, *supra.*

that "a fundamental tenet of insurance law is that the policyholder has the responsibility to research the provisions of his policy and make himself aware of potential claims"). Accordingly, to the extent that Hartford denied benefits based on Ned's untimely filing, this court cannot conclude that Hartford abused its discretion or in any way acted unreasonably.  *See Lajaunie v. H&E Equipment Services*, 2004 WL 2694896 (E.D.La. 2004) (In the absence of any medical evidence in the administrative record showing that the claimant was incapacitated during the filing period, the court could not conclude that the plan administrator abused its discretion in finding the claim untimely.).

Moreover,  to the extent that Hartford's decision is based on Ned's failure to submit sufficient objective medical evidence to support a finding of disability or to establish eligibility for benefits under the terms of the plan, under the appropriate standard of review and based on the record before Hartford, Hartford's decision was not an abuse of discretion.  Hartford's denial of benefits to Ned was reasonable and supported by concrete, substantial evidence in the administrative record.

The administrative record clearly indicates that Ned failed to submit sufficient medical evidence to support a finding of disability or to establish eligibility for benefits under the plan; there is no evidence establishing that Ned was continuously disabled under the terms and conditions of the plan, throughout the elimination period or any time thereafter.  To the contrary, the sole medical evidence submitted by Ned in support of her claimed disability is the Operative Report of Dr. Bertuccini.  Although the Operative Report lists a postoperative diagnosis of "lumbar stenosis, severe, L4-5 with foraminal

stenosis, symptomatic", that statement alone is insufficient to support a finding of disability as defined under the terms and conditions of the plan, as the Report contains no prognosis, no indication of present or future limitations, no findings or comments regarding Ned's ability or inability to engage in any work activities of her own or any other occupation, and no statement of any past or present disability. Despite Hartford's repeated attempts to obtain additional information regarding Ned's medical condition and ability to work, both Ned and her counsel refused to provide Hartford with any additional information, either in connection with Hartford's initial claim review process or the appeal of Hartford's adverse benefits decision.  Moreover, because Ned also refused to provide Hartford with a medical authorization, Hartford could not obtain this information directly from Dr. Bertuccini or any other medical provider.

Finally, under the circumstances of this case, Hartford was under no obligation to independently investigate Ned's claim, but rather could properly rely on the information provided by Ned in making its benefits decision. *See Vega,* 188 F.3d at 298 ("There is no justifiable basis for placing the burden solely on the administrator to generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant.  If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain that information in the absence of the claimant's active cooperation."). *See also Gooden v. Provident Life and Accident Insurance Co.*, 250 F.3d 329, 333 (5th Cir. 2001).

Ned argues that because she was found eligible for social security disability benefits, Hartford should have known of the "severe limiting affects of her condition." However, a social security determination based on federal criteria is not dispositive of whether an individual is disabled under the specific terms and conditions of a group long term disability plan.  *Horton v. Prudential Insurance Co. of America,* 51 Fed.Appx. 928 (5th Cir. 2002) ("while an ERISA plan administrator might find a social security disability determination relevant or persuasive, the plan administrator is not bound by the social security determination") (citation omitted)*; Stallings v. UNUM Provident Corp.*, 2006 WL 328135, *5 (W.D.La. 2006) *citing Sparks v. UNUM Life Ins. Co. of America*, 225 F.3d 659, 2000 WL 1033003 *3 (6th Cir.2000) (plan administrator "was not bound by the Social Security Administration's determination that [claimant] was disabled."); *Johnson v. Sun Life Assurance Co. of Canada*, 2000 WL 33225469, *9 (M.D.La. 2000); *See also The Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965 (2003) (noting the differences between entitlement to social security benefits based on federal criteria and ERISA plan benefits based on the interpretation of the terms in the plan at issue). That result is even more compelling in this case because of the paucity of information regarding Ned's social security award provided to Hartford.   The two documents submitted by Ned and her counsel merely state the amount of monthly benefits Ned would receive from the agency and the medical information used in determining that Ned was eligible for benefits under the agency's rules and regulations, none of which is described or attached to the letters submitted by Ned and all of which, except Dr. Bertuccini's two page Operative

Report, was never provided to Hartford.   These documents contain no medical information and provide no insight as to whether Ned had or has limitations that would preclude her from performing her occupation or any other occupation, or render her disabled under the specific terms and conditions of the plan.  Accordingly, Ned's reliance on the social security determination is unwarranted.  That determination does not establish that Hartford was unreasonable or arbitrary or capricious when it found that Ned had failed to establish her entitlement to benefits under the policy.

In sum, absent some affirmative medical evidence in the administrative record supporting Ned's present contention that she is disabled under terms and conditions of the plan, the court cannot find petitioner's argument is sufficient to defeat summary judgment herein.

For the foregoing reasons, this Court finds that Hartford did not abuse its discretion in denying Ned's claim for long-term disability benefits under the plan.  Accordingly, Hartford's Motion for Summary Judgment will be granted and Ned's claim against Hartford will be dismissed with prejudice.

Thus done and signed at Lafayette, Louisiana, February 16, 2007.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

21